Dana **CZENSZAK** and Annemarie
Czenszak, Plaintiffs,

v.

**DIRECTOR, CHURCH WARDENS AND VESTRYMEN OF THE TRINITY CHURCH IN THE CITY OF NEW YORK** and **The Adams Group, Inc.**, Defendants.

The **RECTOR, CHURCH WARDENS AND VESTRYMEN OF THE TRINITY CHURCH IN THE CITY OF NEW YORK**, Third–Party Plaintiff,

v.

**GUARDIAN SERVICE INDUSTRIES, INC.**, Third–Party Defendant.

No. 93 Civ. 5126 (HB).

United States District Court,
S.D. New York.

Dec. 27, 1994.

---

Ronald J. Mazzucco, Staten Island, NY, for plaintiffs Dana Czenszak and Annemarie Czenszak.

Eric Buonamassa, Wilson, Elser, Moskowitz, Edelman & Dicker New York City, for defendant The Rector, Church Wardens and Vestrymen of the Trinity Church in the City of New York.

Carolyn Stevens, Schoeman, Marsh & Updike, New York City, for third-party defendant Guardian Service Industries, Inc.

BAER, District Judge.

## I. Background

This motion seeks a jury trial notwithstanding plaintiffs' belated demand. Plaintiff Dana Czenszak ("Czenszak") sues for personal injuries allegedly sustained when his hand went through a window of the defendant's building that Czenszak had been washing as part of his employment with Guardian Service Industries, Inc. ("Guardian").[1] Czenszak originally filed the case in New York State Supreme Court, New York State's trial court of general jurisdiction, on May 26, 1993, but defendant Director, Church Wardens and Vestrymen of the Trinity Church in the City of New York ("Trinity Church") removed it to this court on July 23, 1993. Trinity Church impleaded Guardian as a third-party defendant on March 28, 1994. Trinity Church answered on July 27, 1993, while Guardian did so on April 15, 1994.

At a pretrial conference held on June 7, 1994, plaintiffs' former lawyer in this case, Robert Vilensky ("Vilensky"), discovered that the action was not scheduled for a jury trial. Vilensky, however, expressed no intention to make a motion for a jury trial; indeed, Vilensky and the other parties' attorneys at the conference signed a Scheduling Order that specifically indicated the trial would be by the court. *See* Scheduling Order, dated June 7, 1994. Some six weeks later in a letter to the court dated July 22, 1994, plaintiffs' substituted and current lawyer, Ronald Mazzucco, identified himself and requested permission to make the instant motion. For the reasons discussed below, the motion is granted.

## II. Discussion

### A. Relevant Law

In removal cases, the Second Circuit has permitted late jury demands even when due to nothing more than mere inadvertence. *Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389 (2d Cir.1983), *aff'g* 94 F.R.D. 333 (S.D.N.Y.1982); *Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir.1975). The cases reached their holdings by reading into the language of Rule 81(c) of the Federal Rules of Civil Procedure the discretion that is provided by section 4102(e) of the New York Civil Practice Law and Rules. Section 4102(e) permits and encourages state courts to grant motions for a jury trial notwithstanding the failure by a party to comply with specified procedures. The test is simply that "no undue prejudice to the rights of another party ... result." N.Y.Civ.Prac.L. & R. 4102(e).

Interestingly, the Second Circuit, though relying on the relief provided by section 4102(e), has stated that a *number* of factors

---

1. In addition, Czenszak's wife seeks damages for loss of consortium allegedly resulting therefrom.

should be considered in determining whether an untimely jury demand will be granted, rather than simply questioning whether the opponent would be prejudiced. *Higgins* detailed the following factors: 1) whether the action involves issues traditionally triable to a jury; 2) whether the opponent consents, or if the opponent does not consent, whether it would be prejudiced by the grant; and 3) whether the parties have been proceeding under the assumption that the trial would be by jury. 526 F.2d at 1007. Moreover, *Higgins* contemplated possible "other factors," and emphasized that the issue is one committed to the "exercise of [the district court's] sound discretion." *Id.* The Second Circuit, in *Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389, 393 (2d Cir.1983), recognized an additional factor of the attorney who failed to timely demand the jury being "essentially a state court practitioner having greater familiarity with New York practice [who had] been admitted to practice in the federal courts [for] only a year before th[e] suit was filed."

It does not appear that all of the above factors must weigh in the movant's favor in order for it to prevail. *Cascone* had created some uncertainty on this point when, while granting a delinquent jury demand, it noted that the district court had found that "all" of the factors listed in *Higgins* favored the movant in the circumstances the district court had addressed. 702 F.2d at 393. Courts, however, generally do not appear to have read *Cascone* as requiring every factor to be in the movant's favor. In *Corinthian Media, Inc. v. Putnam,* 845 F.Supp. 143 (S.D.N.Y.1994), for example, the Southern District of New York "balanced" the factors, finding that although one factor leaned against granting a late jury demand, it was outweighed by other factors that leaned towards granting one.

### B. Application of Law

Personal injury cases have traditionally been tried by a jury. *Higgins v. Boeing Co.,* 526 F.2d 1004, 1007 (2d Cir.1975). That factor thus weighs in favor of granting the motion. No depositions have been taken. Without consenting to a jury trial, defendants concede that they would therefore suf-

fer no prejudice if a jury trial were ordered. Accordingly, that factor also weighs in favor of granting the motion. The plaintiffs' former attorney in this action, Vilensky, has submitted an affidavit stating that he is "primarily a state court practitioner." The defendants, however, point out that Vilensky has been admitted to practice in the United States District Court for the Southern District of New York since 1981 and had allegedly "indicated that he was 'delighted' that the case had been removed to federal court, that he had litigated numerous cases there, and that he was thoroughly familiar with procedure and practice there. He [also] indicated that he would make no effort to have the case remanded to state court." Aff. of Eric Buonamassa, Attorney for Trinity Church at 3, ¶ 4. As such, the factor concerning attorney experience has created contradictory positions here and perhaps should be in the "weighs against" column.

I believe that the factor addressing whether the parties have been "proceeding under the assumption" that the action would be by jury requires distinct evaluations for both the movant and non-movant, evaluations that prior cases do not seem to have consistently conducted. The test to apply to the non-movant for this purpose appears to have been provided by *Cascone. Cascone* found this factor weighed towards a jury grant, as far as the non-movant was concerned, where "[a]lthough the defendant did not take any positive steps indicating that it expected the case to be a jury trial, neither did it take a position to the contrary. It seems fair to characterize the defendant's position as . . . noncommittal. . . ." 702 F.2d at 393 n. 3. In so holding, *Cascone* seems to state that determining whether the non-movant has "proceed[ed] under the assumption" that the trial will be by the court essentially requires an examination of whether that party would be prejudiced by the grant of a jury trial. Reading *Cascone* in this manner raises for me a small concern with my learned colleague's decision in *Corinthian Media, Inc. v. Putnam,* 845 F.Supp. 143 (S.D.N.Y.1994). There, Judge Wood found that the mere belief of an opponent that a trial would be non-jury was enough to cause this factor to weigh against granting a jury. This was so, Judge Wood found, even though the oppo-

nent would have suffered no prejudice.[2] Because the defendants here would experience no prejudice, I find this factor—as far as the non-movants are concerned—must be chalked up on the plaintiffs' side of the ledger.

Ascertaining whether the party seeking the jury has been "proceeding under the assumption" that the case would be tried to a jury necessitates an examination of whether that party has indicated previously its desire for a non-jury trial. If so, then the court will deny a jury due merely to a change in strategy. Such was the case in *Figueroa v. Pratt Hotel Corp.*, 158 F.R.D. 306 (S.D.N.Y.1994), where the court denied a jury after the plaintiff's attorney had signed a pretrial order stating that the case was to be tried by the judge, and had not sought a jury when the judge had inquired at a conference as to whether the case was to be by a jury. *Id.* at 308. The court concluded that the plaintiff had "manifested what to all outward appearances was an express waiver of a jury," *id.* at 308, and that "on the surface, the case b[ore] every indication that plaintiff made a deliberate decision to waive a jury and [then], for whatever reason, had changed her mind," *id.* at 308.

Here, plaintiffs' previous attorney signed a Scheduling Order indicating a bench trial and expressed no desire for a jury at the pretrial conference at which that order was signed. But as soon as he was replaced by an apparently more seasoned federal litigator, the instant motion was pursued. It could be argued that the plaintiffs have changed attorneys for the very purpose of creating the impression that the failure to make a timely demand was inadvertence or worse on the part of their prior attorney. Indeed, at oral argument, Guardian asserted that plaintiffs had chosen not to seek a jury, but now had simply changed their minds. I, however, do not view the plaintiffs' actions in the instant case in the way that Guardian does. It is beyond peradventure that in this garden variety personal injury case any plaintiff would choose to go non-jury. Although the plaintiffs' former attorney did not request a jury at the pretrial conference, when he claims he discovered there would not be a jury, this is not inconsistent with his alleged inadvertence of not seeking a jury timely in the first place. It seems that the former attorney exhibited inadvertence both by failing to request a jury timely and by failing to make a motion for a jury notwithstanding the waiver as allowed by Rule 81(c). He may have simply been unaware that such a motion could be no less successfully made. I therefore hold that the plaintiffs too were not "proceeding under the assumption" that there would be a bench trial. This, of course, weighs further in favor of their motion.

I find that due to the involvement of issues traditionally triable by jury, the lack of prejudice to the defendants, and the fact that the parties were not proceeding under the assumption that the case would be non-jury, the plaintiffs' motion should be granted. The only contrary touchstone is the failure to request a jury by an attorney admitted to this court since 1981, which failure leans against granting the instant motion in accordance with *Cascone.* That one contravening factor, however, is insufficient to make me rule differently.

### III. Conclusion

The motion for a jury trial notwithstanding a waiver is granted.

**SO ORDERED.**

---

**2.** In *Corinthian Media,* the plaintiff had expressed no intention to seek a jury trial when, at the initial pretrial conference, the defendant stated that the time for a jury demand had passed. The court found the defendant was therefore justified in thinking the case would be by the court from that time until three weeks later when the plaintiff did make a jury demand. *Corinthian Media* would teach that the defendants in the instant case were justified in thinking the trial would be non-jury from the June 7, 1994 conference, when the parties acknowledged in their Scheduling Order that the case would be non-jury, until plaintiffs' new attorney indicated his intent to make the instant motion in his July 22, 1994 letter to the court. Despite the length of time during which an opponent is justified in believing a case is proceeding non-jury, however, I think the dispositive issue, as indicated above, is whether prejudice to the opponent would result.